Good morning. Now I see here from my calendar notes that the county and CAPMC have elected to split seven and a half minutes. I'm not sure that we can put a half minute. Oh we can? I've never, I was going to round up for your benefit so let's go ahead and do that. I've never had such a request to split a minute before. Well we rounded up to eight minutes when appellees counsel stand up then. Good morning. Precision timing your honor. Good morning. May it please the court my name is Timothy Scott on behalf of the appellants the estate of Callie Gary as well as her surviving minor children. We're here on appeal because we allege that the first amended complaint before the district court and the magistrate court did in fact state plausible claims for relief that certainly at the pleading stage should have sufficed to allow the case to go forward. Counsel you make a number of arguments in the pleadings and so I want to focus you on one that as I think you might be making but I'm not sure and that's why I want you to clarify this for me today. What I believe you might be alleging is that the defendants placed Callie in danger by sending her to a clinic known to give appointment information to the abuser and did nothing to remedy it. That's what I see you might be alleging but but attach the allegation to that sort of claim. I mean what did you allege in the complaint that satisfies that? How is it that that that they did that? Well the truth is that we don't have specific facts that they had specific. Well are bare allegations enough counsel? Well we did allege constructive knowledge. We did allege that they should have known even if they did not know because of the heightened risk of not just danger to abused persons. That's the problem counsel. First I want to acknowledge that you know the facts are very tragic and sympathetic but when we're talking about sufficiency of the allegations you're going on a state created danger claim and so I don't think it's enough to just say that the shelter helped her secure the medical appointment for example because there's the but for test that but for their conduct and helping her leave the house and stay in the shelter and but for their assistance in getting the appointment she wouldn't have faced the same danger and so I think given the way you crafted your theories in this case I don't think the bare bones allegation of just helping her secure shelter and the appointment is enough and then as to your point about the actual and constructive knowledge there is that allegation there but as I'm sure you know under we don't accept legal conclusions as true and because their entities just like any institution or agency or county their knowledge can only be through their agents and employees and I didn't see any allegations of employees okay so you can say the county knew or should have known but how even for for rule eight purposes right for an employee to have knowledge there has to be some allegation that a person and not an entity's response or county is responsible for that so can you help me with those questions yes your honor I will try I don't know that we only made bare factual allegations some of the specific factual allegations that we had are the specific notice about this particular third party the the enraged husband and the specific threats that he had made against against Ms. Gary right I didn't mean to suggest that there weren't more specific allegations as to what she faced I'm talking about specific allegations as to the county and CAPMC's role right so CAPMC was apparently run at that time or at least had a supervisor someone in a supervisor capacity by name of Tina Rodriguez and Ms. Rodriguez was the person that accompanied Ms. Gary to a restraining order hearing in which she herself perceived Mr. Gary making threats being violent would have perceived firsthand an enhanced risk of him carrying out the retribution that he had already promised and that CAPMC was aware of it was after that knowing that there was a specific risk from him that we allege that they sought health care treatment off-site at at this clinic and that they transported Ms. Gary in a way in a easily recognizable van with an unarmed security person and also a person who was six months on the job and just not in a position to provide any meaningful protection to Ms. Gary they did make a deliberate choice to do that now did they know that on that specific day and time Mr. Gary would be there again without did they have any policy I mean how do you establish the policy so the policy is is tricky for us honestly particularly with CAPMC that's kind of an important part counsel well the reason is your honor CAPMC is a government actor for for purposes of 1983 at least that's what the the court below found although I know they they challenged that at appeal on appeal we think properly so that they were at least standing in the shoes of a public entity but unlike a classic or an actual public entity they're not susceptible or responsive to PRA requests for example we we can't do records requests we don't have the same government transparency to see what exactly their policies their training programs and such contrast that to a police department for example where their their policies and procedures and their use of force well I understand how it's frustrating and maybe difficult but but don't but we have to find that though in this case that they had a policy well if that's one way or the absence of a policy and I say it that way because there is also supervision and there is also lack of training so it is true that we're sort of trying to our best to extrapolate backwards from the result and from what happened and what we do know pre-discovery and without the aid of public records act or government transparency that we would otherwise have so you don't have that in the you don't have that in the in the complaint though what we what we allege is is the best that we could which is that there is an absence of effective policies and procedures that there was a lack of knowledge no indication that they knew the clinic gives out information it not not specifically no that that's true and don't you have to have that I don't know that we have to have that what I would point to is you don't isn't it just the legal conclusion well I'm thinking of the Kennedy versus city of Ridgefield case for example which was also cited in the merger case where it says that the exact harm or the exact nature of the harm that befalls the ultimate person at the or the victim at the hands of the third party doesn't need to be precisely foreseeable rather it's the danger that that person poses overall and you make the allegation and and here's the thing and this is the sort of confusing and maybe the question I guess I have you indicate in the allegation and that's at er 231 you indicate the county cab mc knew from prior instances that the risk would jeopardize the health and safety of abuser spouse and children where do you come up with I mean how is is that just you think that might have happened from prior instances or how do you how do you know that no why do you allege that how do you allege that uh one of our more specific factual allegations is that tina rodriguez was fired essentially immediately after this incident and this came out in the criminal trial is the reason we were able to allege it in the complaint is that she was fired for incompetence quote-unquote and for dishonesty as well and so again we're we're doing the best we can with the record that we have but it does in our mind at least lend credence to being able to allege on information of belief that there were prior instances that miss rodriguez based on what she was fired well in the specific allegations of dishonesty and incompetence so I would I mean that her job is to relatedly if I recall correctly the district court granted the motion dismiss with leave to amend and you chose to stand on the plate because what we have is the best that you have that's that's the reality that's the reality I mean if I certainly would have amended if we had more vivid and specific facts at our disposal but we put our best foot forward in in the uh in the complaint uh and and as I say I think under a supervision theory uh under a uh failure to train theory we we don't actually have to allege prior instances if the specific risk is is is um imminent enough or is foreseeable enough predictable enough is the word I'm looking for that um that the failure to do so uh would be likely uh would likely result in harm under the circumstances so I guess I say that in response to do we have a prior pattern uh of we don't in this case but the risk is is enough you're hoping to get to discovery to find that one way or the other that yeah there's there's truth in that and uh and I think that given the fact that there is case law uh city of Canton and and conic the supreme court cases that say that one instance can be enough in some circumstances we do feel that this is that case because of how the risk was how foreseeable it was under the circumstances and in that situation under a training theory and under a supervision theory uh we don't actually have to just to make sure I understand so you're you're saying this is the rare case under conic even though there are no allegations because you didn't know at the time that the defendants actually knew that the uh clinic had given out the appointment information to the husband right okay right or that there is a risk the risk of that happening I mean it's I I would acknowledge that if they actually knew that he was going to be there on that date and time I mean just sort of extending the good faith to decent people that they wouldn't have brought their herd there but it's more the deliberate indifference uh to the risk of that happening because of systems or the lack of systems I know I'm running a little short and want to at least reserve some time for rebuttal but uh paragraph 79 and 80 in our complaint which is at er 229 describes a memo that went out to essentially all health care providers but also county welfare providers and and I think a fair inference is that it would have gone to to a battered woman's shelter as well because it's it's exactly what we're talking about describing the specific risk of when an abused person seeks medical care specifically through Medi-Cal in that situation because that can generate in in that particular memo an explanation of benefits which will go back to the home to the to the abuser and give notice in in really a general way or a more general way than this case of the facility at which that person is receiving care and so it's that sort notice that we point to not not as a prior act per se or a prior disaster that happened but rather a very specific warning when a person is removed from the home or removes themselves from the home and then is seeking medical care that act of receiving medical care can generate information that goes back to the abuser and and that's a incredibly serious risk that needs to be guarded against on a systemic level on a training level on a supervisory level and it's our I mean you recognize that if we agree with you and send this back and this goes to a jury and there's this massive verdict there'd be a huge incentive for counties and government officials to just completely avoid victims of domestic abuse why would they I mean if this is the kind of liability that they're going to incur then why would they even they'd never want to help these these these people to take on that that risk well we would assume that they would want to try to help people in in good faith the way that they are now it's just that they have to do it perfectly not not perfectly no I wouldn't say that but but competently and and not recklessly ignoring clear and present danger that does exist so I think in terms of a floodgates argument that deliberate indifference standard is a significant I mean if I were advising a county I would say close down the shelters let's not take on the risk of helping these victims because you know you miss a phone call or you know we hire an incompetent person who doesn't show up for work on the right day and we get an intern to drive somebody to an appointment and then and violence ensues we're all going to be liable all right and I guess my response was that I would advise them keep doing what you're doing but do it better and improve the training programs and improve the supervision so that we can do what we're doing but do it safely with that I'll reserve my 50 seconds thank you your honors good morning your honors timothy buchanan on behalf of the county of madera may it please the court uh I believe the the panel has touched on the the the nerve center of the problem here and that is a lack of connection of dots they allege policy they allege the absence of policies but they don't try to connect any kind of absence of policy here to what actually happened that you know of course the very tragic horrific killing of ms. Garay just to follow up on some of the discussion with mr. Scott a couple times during the argument comments were made that an allegation is made in this case that the county and cap mc sent gary miss gary to the clinic that is not alleged and it didn't happen she had an appointment and they at most from the complaint she they gave her they assisted in some unspecified way her getting there they don't even they're not even specific enough to say that they actually drove drove them although they did say it was an unmarked or was a marked vehicle or something like that but I wanted to be clear this was not arranged by the county and cap mc this medical appointment did they help her secure that appointment secure it in the sense of making it I don't know that's not alleged in the complaint what is alleged in the complaint is that they assisted getting her to the appointment so that's all we know is from the first amendment complaint and what it alleges there which is of course so vague that we have no idea what it is we supposedly did or who supposedly did it because it doesn't identify that it was the county or cap mc there are different entities cap mc is a private entity the county obviously a governmental entity but there has to be at least be some some allegation with specificity enough to be able to differentiate and say well who was it who did it because right now it just says they both did it in some unspecified way but I wanted to make sure that it wasn't the court is not on the impression that this was some sort of compulsory medical appointment that the shelter needed her to go to that isn't what happened here and that's not what it's alleged if they had alleged that the that the that the capmc knew that the appointment information had been given to her her former husband and nevertheless drove her to the appointment would that be enough to satisfy the rare case under conic to show deliberate indifference I would say only if there are specific enough factual allegations to support that because under Twombly and Iqbal of course they would have to allege sufficient facts from which a reasonable inference could have been drawn that they knew Julio Gary was going to be at the site that day but just alleging that as a conclusion would not be sufficient so they would that would not get them there and in fact on the specific issue of knowledge Iqbal specifically addressed that because in that case there was an allegation that Ashcroft and Mueller knew that the the subordinates the underlings were depriving detainees of constitutional rights and did nothing and and basically condoned it that type of thing and the supreme court of course in that case said that bare allegation of knowledge was insufficient to meet the plausibility standards there has to be some factual indication of how it was they knew and what they specifically did or didn't do so yes on the broader sense yeah if they knew Julio Gary was going to be there and it was plausible and it was factually supported for a reasonable inference that would be enough and the fact that they said they do allege this they do allege that and and this is at er 231 they that the county and cap mc had actual and constructive knowledge and knew and should have known that camera that camera had disclosed private health care information that in the past but they that's what they say that that is what they say and that's insufficient because that is a conclusion and it's all too easy to try to loop a governmental entity in by saying well they knew they knew camerina was doing this and what they drove her there because again they didn't send her there and they didn't arrange that appointment in terms of you know there there could be an implication for example at the shelter needed needs all uh women who go there to have a medical appointment of some sort that none of that is a legend i'm not no that's here but just the bare allegation we know they knew that camerina does this they disclose patient information whether they had disclosed to julio in particular and that they disclosed to julio in particular is a conclusion uh there would have to be some kind of factual allegation for how that how that came about because especially under the plausibility standard because uh and this is repeating an argument that we made in the brief but it is completely implausible that the county and cap mc haven't taken all the steps that they did to keep her in a location that was unknown to julio gary then voluntarily knowingly willingly took her to a place where they knew he was going to be it's completely implausible so when when on its face it is completely implausible that would certainly require under twombly and eqbal that the complaint alleged sufficient facts for how it was that despite having taken all those measures they then completely ignored them and vol and willingly exposed her it seems like there would be a missing link in that anyway i mean they even if they knew that that the appointment information had been given to the husband that there's still a step that they wouldn't i would think they'd need to allege that and they therefore knew he would be there waiting for her i mean that's he may have been at work that day may have gone on a trip we don't know that that's exactly right they would have to have alleged plausibly factually that that they knew that he was going to be there that really that he had been told of the appointment because he would have to be there at the right time and know exactly uh when she was going in there so yeah that that would have to be alleged but there would have to be sufficient facts especially when on its face the plausibility is really on the lines of the plausibility the supreme court uh rejected in the in the iqbal case so this is this is a dramatic allegation that the attorney general of the united states and the fbi director did these bad things you got to allege more than just a conclusion that they knew and didn't do anything about it or that they intended it to be discriminatory so going back to iqbal when it alleges something that on the other facts alleged makes it roundly implausible that they did what they did that would certainly in our position raise a special duty to have to allege those plausibility facts uh in a in a sufficient way to read to a lead to a reasonable inference that they basically just ignored everything they'd done right up to that point um on on the issue of policy and mr scott said well the what we're alleging here is the absence of a policy well the that is true they have not alleged any affirmative policy no express policy they they get at the idea of a custom and practice type policy by alleging as as the panel pointed out to mr scott that there were prior incidents and that allegedly the county and cap mc did nothing to institute a policy that would actually have put measures in place that could have prevented this acts this this kill this killing uh there are no such time i'm sorry you're actually over time oh i'm sorry i appreciate that your honors and if there's nothing further i'll turn it over to thank you mr rapport thank you good morning your honors i'm gaspar rapport with horvitz and levy on behalf of community action partnership of madera county inc which i will refer to as cap mc so may it please the court um let me just introduce so you've heard from the council from the county of madera and let me tell you about cap mc very briefly it's a private non-profit organization that provides charitable services to the community including as alleged the complaint services to victims of domestic violence i just want to hit a few points that were asked by this panel first with respect to knowledge there's no factual allegation plausible factual allegation of knowledge by cap mc of a disclosure by a third party camarena health of that medical appointment on that day as your as the court knows the there has to be some factual basis from which the court can draw a reasonable inference of knowledge now to contrast this lack of an allegation regarding knowledge to other allegations of knowledge in the complaint there are allegations that cap mc knew about the history of abuse that is properly alleged in the complaint and i think that this is a nice contrast to the lack of allegations of any knowledge that cap mc had about a specific risk of that misery was going to face on that day when she went to a medical appointment the opposing council referred to the kennedy case with respect to foreseeability i think it's important to understand the scope of this very narrow scope of the state created danger claim which is an exception to the general rule that when there's a case of private violence the failure to act by the state does not give rise to a violation of substantive due process there there are obviously a couple of exceptions to that but the exception that is relevant in this case is state created danger there has to be an affirmative act that either creates or increases the risk of harm to a plaintiff and that risk of harm has to be known or obvious the defendant and then the defendant has to ignore the risk and intentionally expose the plaintiff to that risk of harm because of the lack of knowledge here there's really no allegation that cap mc engaged in acted in in a deliberate indifferent way to the safety of ms gray i would i was confused as to why the district court found that cap mc was a state actor what's your position on that so and let me preface this answer to your question with the awkwardness that we have in this case of the assertion of a claim that is based on our research has only been asserted against law enforcement officers clear state actors to a private entity that is uh that receives uh funding so that's an allegation that is properly alleged in the complaint that administers some programs that are through contracts with the the county an organization that has um in its governance right so i think it's alleged that about a third of the board of the that governs um cap mc is appointed by the county but none of these allegations by themselves suffice to show that cap mc is a state actor and very importantly there are no allegations that the specific conduct that is alleged as to cap mc um what was a necessary was um intimately intertwined with the conduct of the county which is what this court requires um to find that the non-governmental entity is a state actor right okay so the conduct that just to but if we agree with you that the plaintiffs have failed to allege a constitutional claim or violation um then do we even need to address this uh issue about cap mcs uh being a state actor the court could reach the could affirm by either uh going to the the merits of the constitutional violation or finding that we are not as there's insufficient allegations that we are a state actor um with respect to the lack of policy um the only thing that is alleged in the complaint is that there was a lack of policy to guard against disclosure of confidential information even if that were properly alleged the problem with that allegation is that cap mc did not disclose anything so even if it had a policy or even if its policies were insufficient to guard against disclosure of confidential information the problem here is the disclosure by a third party is the allegation then that cap mc should have had a policy to guard against disclosure by third parties that's that's just implausible so there's definitely not sufficient allegations to allege a policy here judge nguyen asked about discovery and discovery is a is perfectly appropriate under the the rules of civil procedure to substantiate claims that are properly alleged discovery is not meant to find new claims to assert against a party um so that that would be our position here i think i covered everything i needed to cover do you have any questions i'm happy to answer it doesn't appear that we do thank you very much thank you i think you've got a little bit of time left council i don't know that i have anything to add here but i appreciate it all right thank you to all council for your arguments this morning the matter is submitted and that concludes our calendar for this morning so we'll stand in recess until tomorrow all rise this court for this session stands adjourned
judges: NGUYEN, MENDOZA, UNKNOWN